PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN RUSU, *et al.*, | ) | |
| | ) | CASE NO. 4:15CV1954 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| CORRECTIONS CORPORATION OF AMERICA, | ) ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF Nos. 22 and 23] |

Pending before the Court are Defendant's Motion for Summary Judgment (ECF No. 22) and Plaintiffs' Motion for Extension of Time to Respond (ECF No. 23). For the following reasons, the Court grants Defendant's Motion for Summary Judgment. Because Plaintiffs timely filed their Response, the Court denies their Motion for Extension as moot.

**I. Stipulated Facts**

The stipulated facts[1] are as follows:

1. Corrections Corporation of America ("CCA") hired Susan Rusu as a corrections officer on August 27, 2012.

2. In November 2014, CCA suspended Ms. Rusu for inappropriate contact with an inmate.

---

[1] *See* Written Stipulations as to all Uncontested Facts (ECF No. 21).

(4:15CV1954)

3. On April 2, 2015, the lawyer for Joseph Rusu, Ms. Rusu's husband, contacted CCA and informed it that Ms. Rusu was in contact with an inmate in a Pennsylvania prison.

4. CCA confirmed that Ms. Rusu was in contact with an inmate in a Pennsylvania prison and that this inmate was the same inmate with whom she had the inappropriate contact that lead to her suspension in November 2014.

5. CCA's investigation did not determine that Ms. Rusu had a physical relationship with the inmate.

6. CCA terminated Ms. Rusu's employment on May 1, 2015.

## II.  Background

Plaintiff Susan Rusu began working as a Correctional Officer for Defendant Corrections Corporation of America on September 10, 2012.  ECF No. 22-1 at PageID #: 254.  Plaintiff participated in Defendant's new hire training program and passed a proficiency test at the completion of training.  *Id.* at PageID#: 254, 272–77, 281.  Part of this training was titled "Games Criminals Play," a segment on officer-inmate relationships.  *Id.* at PageID #: 159, 276.

During this training period, Plaintiff received Defendant's Code of Conduct and Standards of Employee Conduct.  *Id.* at PageID #: 278–80, 282–84.  Officers are prohibited from engaging in "inappropriate relationships or contacts with residents," and must "avoid situations that could be expected to create a conflict of interest or the appearance of a conflict of interest with [their] duties."  *Id.* at PageID #: 260.  The Code defines inappropriate contacts as including "engaging in inappropriate correspondence with residents (*e.g.*, 'love' letters), and accepting phone calls from residents while outside the facility."  *Id.*  Any relationships with inmates,

(4:15CV1954)

including contact with former inmates within one year of the inmate's transfer, must be reported to the facility warden or acting administrative duty officer.  *Id*.  Additionally, officers must "cooperate with internal and authorized external investigations into activities in connection with [their] employment or operations at the facility."  *Id*. at PageID #: 261.

After reports that Plaintiff was engaging in inappropriate conduct with Inmate Jose Barajas, Defendant initiated a formal investigation.  As part of the investigation, Plaintiff swore an affidavit admitting that she frequently interacted with Inmate Barajas, though she denied that the relationship went beyond the typical inmate-officer relationship.  *Id*. at PageID #: 268–69, 271.  Plaintiff accused other officers of having inappropriate relationships with inmates.  *Id*. at PageID #: 267.

Plaintiff also submitted a written statement requesting that her employment not be terminated.  *Id*. at PageID #: 293.  She admitted to speaking with Inmate Barajas "daily and frequently."  *Id*.  Plaintiff denied doing anything "'extra' or 'special'" for him but she acknowledged that "speaking to Barrajas [sic] as much as [she] did looked bad and presented the wrong image."  *Id*.  Plaintiff reasserted her allegations that other officers also had excessive contact with inmates.  *Id*. at PageID #: 293–94.

Defendant's investigation concluded that Plaintiff had engaged in improper contact with an inmate, created the appearance of an inappropriate relationship, and been inattentive to her duties.  *Id*. at PageID #: 256.  Defendant's review of an eight-day period of recorded video showed that Plaintiff interacted with Inmate Barajas everyday, once for an hour-long period.  *Id*. at PageID #: 269.  Later, Inmate Barajas requested to transfer from his cell, where he had lived

3

(4:15CV1954)

for five years, to the one Plaintiff supervised. *Id*.  After the transfer, their interactions increased. *Id.* at PageID #: 270.  Defendant found that Plaintiff regularly spent up to three hours of each shift talking to Inmate Barajas. *Id*.  As a result of the investigation, Plaintiff received a Problem Solving Notice informing her of the investigation's results. *Id.* at PageID #: 256–57.  She was suspended for three days. *Id*.  Inmate Barajas was transferred to a prison in Pennsylvania. ECF No. 22-3 at PageID #: 304.

On April 3, 2015, Plaintiffs' attorney, then acting solely as a representative of Plaintiff Joseph J. Rusu, called Defendant to notify it that Plaintiff Susan Rusu had been talking with Inmate Barajas using the telephone. ECF No. 22-2 at PageID #: 302.  On April 15, 2015, Defendant gave Plaintiff another Problem Solving Notice. ECF No. 22-3 at PageID #: 310. Having reviewed the telephone call, Defendant found that Plaintiff and Inmate Barajas discussed their love for each other, as well as plans for Plaintiff to use her birth certificate to get a photo ID in her maiden name so that she could visit him. *Id*.  Plaintiff also asked Inmate Barajas to destroy any letters she had sent him. *Id*.  Defendant terminated Plaintiff on May 1, 2015 for violating the Code of Conduct's provisions barring external contact with inmates and interference with investigations. *Id.* at PageID #: 262.

Plaintiff Susan Rusu and her husband, Plaintiff Joseph Rusu, brought suit.  Plaintiffs allege that Defendant fired Plaintiff Susan Rusu because she is female, that similarly situated male Corrections Officers who engaged in the same conduct were not fired, and that Defendant's reasons for discharging Plaintiff Susan Rusu were pretextual for its discriminatory motive. ECF No. 1-1 at PageID #: 6–7.  Plaintiffs also allege that Defendant "negligently permitt[ed] Plaintiff

4

(4:15CV1954)

Susan Rusu to fraternize with [I]nmate Barajas" and its unlawful termination of Plaintiff Susan Rusu created "serious problems" in their marriage. *Id.* at PageID#: 8. Plaintiffs alleges that this conduct constitutes a loss of consortium and intentional infliction of emotional harm on Plaintiff Joseph Rusu. *Id.*

Defendant now moves for summary judgment on Plaintiffs' claims. ECF No. 22. Plaintiffs filed a Response. ECF No. 24. Defendant replied. ECF No. 25.

### III.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure of materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.

5

(4:15CV1954)

1995). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable fact finder that the non-moving party is entitled to a verdict. *Id*.

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

### IV. Analysis

Plaintiffs contend that Defendant fired Plaintiff Susan Rusu because she is female and that its reasons for firing her are pretextual for its discriminatory intent. For the following reasons, the Court finds that there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law.

A plaintiff may prove discriminatory motive through the use of either direct or circumstantial evidence of discrimination. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997). Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was [the] motivating factor in the

6

(4:15CV1954)

employer's actions . . . . It does not require the factfinder to draw any inferences to reach that conclusion." *Sharp v. Aker Plant Services Group, Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (citation omitted; internal quotations omitted).  Circumstantial evidence, on the other hand, is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

When a plaintiff cannot prove discrimination by way of direct evidence, the three-step framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) guides the analysis of discrimination claims founded upon circumstantial evidence.  *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).  In the first step, the plaintiff must present evidence sufficient to establish a *prima facie* case of discrimination.  *Ercegovich*, 154 F.3d at 350.  This burden is easily met, and is not intended to be onerous.  *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  To satisfy the *prima facie* case, the plaintiff must prove by a preponderance of the evidence that (1) plaintiff is a member of a protected group; (2) plaintiff was subjected to an adverse employment decision; (3) plaintiff was qualified for the position; and (4) plaintiff was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably. *Texas Dep't of Community Affairs*, 450 U.S. at 253–54; *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009).

(4:15CV1954)

If the plaintiff establishes the *prima facie* case, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Lefevers*, 667 F.3d at 725. If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a pretext for discrimination. *Id*. To rebut the employer's nondiscriminatory explanation for termination and survive summary judgment, the employee must produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired [the employee]." *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009). A plaintiff can accomplish this by proving "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id*.

This three-part inquiry establishes "an allocation of the burden of production and an order for the presentation of proof" in employment discrimination cases. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 559 (6th Cir. 2000) (internal quotations omitted). The burden of production shifts between litigants as the analysis advances. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011). At all times, however, "the ultimate burden of persuasion remains on the plaintiff to demonstrate that [membership in the protected class] was the 'but-for' cause of [the] employer's adverse action." *Id*.

In this case, Plaintiffs cannot establish even the "easily met" *prima facie* case for discrimination. Parties do not dispute that Plaintiff Susan Rusu meets the first three elements of the *prima facie* case. As a woman, Plaintiff is part of a protected class, and she suffered an

(4:15CV1954)

adverse employment action when she was terminated from her job. Neither party argues that she was not qualified for her job. Plaintiffs have not shown that, under the fourth prong, Plaintiff Susan Rusu was replaced with a person outside the protected class or that similarly situated, non-protected employees were treated more favorably.

Plaintiffs only challenge Plaintiff Susan Rusu's discharge on the basis that other similarly situated non-protected employees were treated differently. As support, Plaintiffs cite allegations Plaintiff Susan Rusu made in her deposition. She contends that other Correctional Officers spent similar amounts of time with inmates. ECF No. 22-1 at PageID #: 192–98. These allegations are also noted in her Problem Solving Notices, *id.* at PageID #: 256–57, her investigation interview, *id.* at PageID #: 268–69, 271, and her written statement, *id.* at PageID#: 293–94. Plaintiffs do not provide evidence beyond Plaintiff Susan Rusu's own statements.

Even given the deference afforded to the non-moving party in a motion for summary judgment, these statements are not enough to show that Plaintiff Susan Rusu suffered discriminatory treatment. Plaintiffs are correct that, in evaluating a motion for summary judgment, a court must accept direct evidence refuting a moving party's motion for summary judgment as true. *Schrieber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010). The Court must also construe testimony, and any reasonable inferences drawn from the testimony, in the light most favorable to Plaintiffs. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court, however, does not have to accept Plaintiff's bald assertions and conclusory statements as proof of Defendant's discrimination. *Hill v. A.O. Smith Corp.*, 801 F.2d 217, 222 (6th Cir. 1986); *see also Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996); *Klepper*, 916 F.2d at 342.

9

(4:15CV1954)

Plaintiffs have not provided any evidence other than Plaintiff Susan Rusu's own conclusions about other officers' behavior. Moreover, Plaintiffs only allege that other officers spent significant time with inmates while at work. ECF No. 22-1 at PageID #: 192–98. Plaintiff Susan Rusu admitted that she cannot name any other officers who engaged in behavior as egregious as her own, such as contacting inmates by telephone or asking inmates to destroy evidence. Id. at PageID #: 191–92. For these reasons, the Court finds that Plaintiffs have not shown that similarly situated, non-protected employees were treated more favorably.

Assuming *arguendo* that Plaintiffs meet the *prima facie* case, Plaintiffs cannot show that Defendant's reason for firing Plaintiff Susan Rusu was a pretext for discrimination. Defendant contends that it legitimately and non-discriminatorily discharged Plaintiff Susan Rusu because she violated its Code of Conduct by engaging in improper contact with an inmate and asking him to destroy letters she sent. ECF No. 22 at PageID #: 135. Plaintiffs do not contest that Defendant has met the second step of the *McDonnell Douglas* analysis. ECF No. 24 at PageID #: 319. Plaintiffs argue that, under the third step of *McDonnell Douglas*, Defendant's reason for firing Plaintiff Susan Rusu was a pretext for discrimination. Id. at PageID #: 320. According to Plaintiffs, Plaintiff Susan Rusu's discharge was not actually motivated by her relationship with Inmate Barajas, and that her relationship with Inmate Barajas was an insufficient reason to motivate her termination.

Defendant has sufficiently shown that its reason for firing Plaintiff Susan Rusu was based in fact. Plaintiff conceded that she corresponded with Inmate Barajas, she spoke with him on the telephone, they were in love, and she asked him to destroy the letters she sent him. ECF No.

10

(4:15CV1954)

22-1 at PageID #: 149–50, 189–92, 223–27. Defendant has also shown that its stated reasons indeed motivated its decision and were sufficient to motivate its action. Defendant provided affidavits from its Human Resources Manager Diane Phillips and Warden Michael Pugh stating that these actions were in violation of its Code of Conduct, that they were fireable offenses, and that these violations motivated Plaintiff Rusu's discharge. ECF No. 22-2 at PageID #: 297, ¶ 10; ECF No. 22-3 at PageID #: 304, ¶ 12. Therefore, Defendant has demonstrated that its stated reasons are factually correct and *actually* motivated its decision.

  The burden then shifts to Plaintiffs to demonstrate the existence of material facts in dispute. Plaintiffs rely on the same reasoning they used to establish their *prima facie* case: that similarly situated male officers were not sanctioned for comparable conduct. As discussed, Plaintiffs have not demonstrated that any other officer was engaged in a romantic relationship with an inmate, or that any other officer asked an inmate to destroy evidence. Plaintiffs failed to provide any other evidence that Plaintiff Susan Rusu's discharge was not motivated by her relationship with Inmate Barajas, or that the relationship was not a sufficient reason to terminate her employment.

  Because there is no evidence supporting Plaintiff's claims and because Defendant had a legitimate, non-discriminatory business reason for discharging her, the Court finds that no issue of material fact exists, and Defendant is entitled to judgment as a matter of law.

  Additionally, because Plaintiff Joseph Rusu's claims for intentional infliction of emotional distress and loss of consortium are predicated on Defendant's discriminatory behavior,

(4:15CV1954)

the Court grants the Motion for Summary Judgment in favor of Defendant on those claims related to Plaintiff Joseph Rusu.

### V. Conclusion

For the foregoing reasons, the Court grants Motion for Summary Judgment in favor of Defendant. Plaintiffs' Motion for Extension is denied as moot.


    IT IS SO ORDERED.


| October 31, 2016 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |